*175 UPON A REHEARING EN BANC
COLEMAN, Judge.
Floyd Keith Brown was convicted by a jury of statutory burglary, rape, and two counts of forcible sodomy. A panel of this Court reversed the convictions on the ground that the trial court erroneously excluded as hearsay two statements offered by the defense. See Brown v. Commonwealth, 23 Va.App. 225, 475 S.E.2d 836 (1996). We granted the Commonwealth a rehearing en banc.
Upon rehearing, we uphold the trial court’s ruling that the defendant’s out-of-court question to a police officer was inadmissible hearsay. However, we hold that an out-of-court conversation which allegedly occurred between the victim and defendant was not hearsay because it was offered to prove that the victim and defendant knew one another or had previously met; it was not offered to prove the truth or falsity of the assertions contained therein. Thus, we hold that the trial court erred by refusing to admit testimony that a witness overheard the conversation between the victim and the defendant. However, we hold that the error in excluding the conversation was harmless because the evidence of guilt was overwhelming. Accordingly, we affirm the defendant’s convictions.

I. BACKGROUND

The victim testified that on June 25, 1994, she went to bed around 12:30 a.m. or 1:00 a.m. Some time later, she awoke and found the defendant, who was naked, standing over her bed. The victim screamed and tried to get away. The defendant grabbed the victim by the neck, hit her in the face, and choked her. He then threw her across the bed and raped her, forcing her to engage in both oral and anal sodomy. After forcing the victim to have intercourse, the defendant fell asleep and the victim fled from the apartment.
A passing motorist saw the victim “running down the road naked.” The motorist testified that the victim was “bloody” and “scared to death.” The victim told the motorist that a *176 man had broken into her apartment and raped her. The motorist called the police. When the police arrived, they found the victim in the back seat of the motorist’s car wrapped in a sheet, which the motorist had provided. Officer R.L. Shaner testified that the victim’s right eye was “swollen and bruised.”
The police went to the victim’s apartment and arrested the defendant, who was asleep in the victim’s bed. The defendant told the police that he had consensual intercourse with the victim. He said that he had gone to the victim’s apartment because he had obtained marijuana for her. He told the officers that he and the victim did not consume all of the marijuana. The police found no marijuana in the apartment, and the victim’s blood tested negative for marijuana. The defendant’s blood tested positive for cocaine but showed no trace of marijuana. A forensic expert testified that marijuana would be present in a person’s blood for at least twenty-four hours after the last use.
When the police searched the victim’s apartment, they found a chair placed against the outside of the victim’s kitchen window. The kitchen window sill was bent, and the screen was damaged. The defendant’s palm prints were found on the kitchen sink facing inward from the kitchen window. The defendant’s shoes were on the kitchen sink, and . dirt on his shoes appeared to match the dirt in the victim’s backyard. Furniture in the apartment had been overturned. Blood was found in eight different areas on the bed sheet and on the victim’s t-shirt.
A doctor examined the victim that night and stated that the victim was “clearly nervous and jittery.” The victim’s right eye was bleeding and swollen shut, and she had several red marks on her forehead. In addition, she had several scratches on her right front thigh, several red marks on her throat, and dried blood on her head, hair, and perineum. Her nose was bloody, and blood was found under all of her fingernails. Her perineum was slightly swollen and red.
*177 In response to the victim’s claim that she had bitten her attacker’s thumb, the police examined the defendant’s thumb when he was arrested and found bite marks. The bite marks were open and raw and appeared to be of recent origin.
At trial, the defendant testified that he had known the victim for around two and one-half months before the incident, that she had admitted him to the apartment that night, and that they had consensual sexual intercourse. He denied using any force or violence on the victim.

II. OFFICER BERRYMAN’S TESTIMONY

At trial, Officer Matthew Berryman testified that, at the police station, the defendant “asked me twice if Peggy [the victim] knew he was here.” The prosecutor objected on the ground that the statement was hearsay. The trial judge sustained the objection and ruled that this testimony was inadmissible hearsay.
Hearsay is “[a] statement other than one made by the declarant while testifying at trial — offered in evidence to prove the truth of the matter asserted.” Black’s Law Dictionary 649 (5th ed.1979).
Whether an extrajudicial statement is hearsay depends upon the purpose for which it is offered and received into evidence. If the statement is received to prove the truth [or falsity] of its content, then it is hearsay and, in order to be admissible, must come within one of the many established exceptions to the general prohibition against admitting hearsay.
Hanson v. Commonwealth, 14 Va.App. 173, 187, 416 S.E.2d 14, 22 (1992).
“Part of the difficulty in ‘not-for-truth’ situations is due to the fact that often such evidence will have a dual nature; the declaration may indeed be relevant on some matter unrelated to the truth of the content of the statement, and yet the content of the statement may go to the issues of the case as well. See, e.g., Donahue v. Commonwealth, [225 Va. 145, 300 S.E.2d 768 (1983) ]. This is perhaps the situation *178 which creates the greatest dilemma for the courts. In that regard, however, it should be remembered that it is a time-honored principle of evidence law that, in general, if evidence is admissible for any purpose, it is admissible.”
Jenkins v. Commonwealth, 22 Va.App. 508, 521, 471 S.E.2d 785, 791 (1996) (en banc) (quoting 2 Charles E. Friend, The Law of Evidence in Virginia § 18-3, at 95-96 (4th ed.1993) (footnote omitted)).
The initial issue in this case is whether an extrajudicial statement that is in the form of a question, such as “Does Peggy know I am here?”, can be an assertion or declaration of fact that can constitute hearsay. In order for a statement to be hearsay it must assert the truth or falsity of a fact. In many instances, questions by an out-of-court declarant contain no assertion; they simply seek answers. See Carlton v. State, 111 Md.App. 436, 681 A.2d 1181, 1184, cert. denied, 344 Md. 328, 686 A.2d 634 (1996). However, a question can include an implied assertion. “For example, the question, ‘Do you need change?’ impliedly asserts that the questioner has change. The question, “Why did you stab me, Brutus?’ impliedly asserts that the questioner was stabbed by Brutus.” Id. As these questions demonstrate, the extent to which the question may or may not contain an implied assertion depends on the nature of the question and the circumstances. But see Bolen v. Paragon Plastics, Inc., 754 F.Supp. 221, 225 (D.Mass.1990) (holding that, under the Federal Rules of Evidence, an inquiry cannot be an assertion); United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir.1990) (same); State v. Carter, 72 Ohio St.3d 545, 651 N.E.2d 965, 971 (holding that the question posed by the accused in this case was not an assertion because it was incapable of being proved either true or false), cert. denied, — U.S.-, 116 S.Ct. 575, 133 L.Ed.2d 498 (1995); Washington v. State, 87 Md.App. 132, 589 A.2d 493, 495 (1991) (holding that the question posed by the accused was not offered as an assertion of truth).
The Virginia Supreme Court recognized in Stevenson v. Commonwealth, 218 Va. 462, 237 S.E.2d 779 (1977), that an *179 assertion can be implied, in that case from a declarant’s conduct, and that such an implied assertion is inadmissible as hearsay if offered to prove the truth of the assertion implied from the conduct. In Stevenson, the defendant was suspected of committing a homicide. A police officer came to the defendant’s home and asked his wife if the defendant had changed clothes the day of the homicide. In response to the officer’s question, the defendant’s wife retrieved a shirt and gave it to the officer. Id. at 464, 237 S.E.2d at 781. The Supreme Court held that “the conduct of [the defendant’s wife] was intended as a nonverbal assertion for the purpose of showing that the shirt not only belonged to [the defendant] but was in fact worn by him on the day of the crime” and was, therefore, inadmissible hearsay evidence. Id. at 465, 237 S.E.2d at 781-82.
In this case, when the defendant asked “Does Peggy know I am here?”, he was necessarily implying or asserting, “I know Peggy personally.” See, e.g., Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (finding that a witness’ statement included an implicit identification of the accused); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (finding that a conspirator’s statement implied petitioner’s guilt); United States v. Reynolds, 715 F.2d 99 (3d Cir.1983) (recognizing the validity of implied assertions and holding that codefendant’s statement, “I didn’t tell them anything about you,” was relevant only to prove the accused’s guilt and, therefore, inadmissible hearsay); see also Laurence H. Tribe, Triangulating Hearsay, 87 Harv. L.Rev. 957, 958 (1974); Ronald J. Bacigal, Implied Hearsay: Defining the Battle Line Between Pragmatism and Theory, 11 S. Ill. U. L.J. 1127, 1141 (1987). The Virginia Supreme Court has held that “[t]he rule against hearsay prohibits ... the admission of extra-judicial statements ‘only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted.’” Church v. Commonwealth, 230 Va. 208, 211-12, 335 S.E.2d 823, 825 (1985). The defendant offered the statement, “Does Peggy know I am here?”, to prove by implication from the question that he personally knew the *180 victim. In order for the jury to infer from the statement that the defendant knew the victim, the jury had to determine the truth or falsity of the implied assertion. The statement’s probative value depended entirely upon the truth of an inferred fact that the statement implied and as such it was hearsay.
Defendant’s statement to Officer Berryman was not relevant for any other purpose and the fact that the statement was made in no way proved the defendant’s relationship with the victim unless the truthfulness of the implied assertion was accepted. Therefore, the statement was offered to prove the truth of its content and it was inadmissible hearsay.[1]

III. CHARLES GENTRY’S TESTIMONY

A defense witness, Charles Gentry, testified that he had seen the defendant and the victim together on two or three occasions. Defense counsel sought to have Gentry testify that he had “overheard a conversation between the defendant and [the victim] involving trading sex and cocaine that took place in the area of Gibson’s store.” The trial judge ruled that the fact of the conversation, but not the content, was admissible because the content was hearsay and was not proper impeachment of the victim’s testimony that she did not know the defendant.
The trial judge correctly ruled that the fact a conversation purportedly occurred was admissible to prove that the defendant and the victim knew one another. The fact that the conversation took place would also have been relevant to impeach the victim if the jury believed Gentry’s evidence that the conversation occurred. However, the defendant did not seek to introduce the evidence that a conversation had occurred between the victim and the defendant after the trial judge ruled that Gentry could not testify as to the nature and particulars of the alleged conversation. Nevertheless, the *181 trial court erred in ruling that Gentry could not testify to the nature and content of the alleged conversation in order to prove that the defendant and victim knew one another and to prove the nature of the relationship. See Manetta, v. Commonwealth, 231 Va. 123, 127, 340 S.E.2d 828, 830 (1986) (“If the court can determine, from the context and from the other evidence in the case, that the evidence is offered for a ... purpose [other than to establish the truth of the facts asserted], the hearsay rule is no barrier to its admission.”). Gentry would have testified that he had seen the victim and the defendant together on two or three occasions before the alleged offense and that on one occasion their conversation was about trading sex for cocaine. Gentry’s testimony was offered to prove the fact that the statements about trading sex for cocaine were made; therefore, the truth or falsity of the alleged conversation was not at issue. However, the nature of the conversation between the victim and defendant tended to prove, if the fact finder believed it occurred, that the conversants were not strangers and were, in fact, more than casual acquaintances. The fact that the defendant and victim had engaged in a conversation of an intimate or personal nature prior to the alleged offense was relevant, if believed, to prove the prior relationship between them. Although the conversation would be inadmissible as hearsay to prove the truth or falsity of whether they in fact traded sex for cocaine, the fact that they may have engaged in an intimate conversation would prove that they knew one another, which is relevant to whether they engaged in consensual sex, and it could be considered to refute the victim’s testimony that she did not know the defendant. Thus, the content of the alleged conversation “was not hearsay, but was admissible as circumstantial evidence tending to establish the probability of a fact in issue.” Church, 230 Va. at 212, 335 S.E.2d at 825.
“The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.” Blain v. Commonwealth, 7 Va.App. 10, 16, 371 S.E.2d 838, 842 (1988). The trial court had discretion to limit the extent to which the *182 witness would be permitted to give the details and particulars of the conversation. However, because the alleged conversation was relevant to prove the nature of the relationship between the victim and the defendant, which fact was material to prove whether the sexual intercourse was consensual or against the victim’s will by force or violence, it was error to prohibit Gentry from testifying about the general content of the alleged conversation.
Although the trial court erred by refusing to admit Charles Gentry’s testimony, the error was harmless. “A defendant is entitled to a fair trial but not a perfect one.” Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). “[A]n erroneous evidentiary ruling does not require reversal of a criminal conviction where the error is harmless.” Weller v. Commonwealth, 16 Va.App. 886, 896, 434 S.E.2d 330, 337 (1993) (holding that exclusion of non-hearsay testimony was harmless error), aff'd on reh’g en banc, 443 S.E.2d 171 (1994) (affirming order unpublished in Virginia Court of Appeals Reports). Because the defendant conceded that he had sexual intercourse with the victim, the only issues for the jury to decide were whether the intercourse was accomplished through the use of physical force and against the will of the victim. Evidence independent of the victim’s testimony and without regard to her credibility proved overwhelmingly that the defendant used force to accomplish non-consensual sexual intercourse. See Jenkins v. Commonwealth, 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992), cert. denied, 507 U.S. 1036, 113 S.Ct. 1862, 123 L.Ed.2d 483 (1993); Goins v. Commonwealth, 218 Va. 285, 288, 237 S.E.2d 136, 138-39 (1977). Thus, even if the jury believed that the defendant and the victim discussed exchanging sex for drugs and that such a conversation affected the victim’s credibility, those determinations would have had no bearing upon the jury’s decision that the defendant used force to have non-consensual sexual intercourse with the victim. Therefore, neither the jury’s guilty verdict nor its recommended sentence would have been influenced by admitting Charles Gentry’s testimony.
*183 In Virginia, non-constitutional error is harmless “[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.” “[A] fair trial on the merits and substantial justice” are not achieved if an error at trial has affected the verdict. ... An error does not affect a verdict if a reviewing court can conclude, without usurping the jury’s fact finding function, that, had the error not occurred, the verdict would have been the same.
Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (alteration in original) (quoting Code § 8.01-678).
Here, overwhelming evidence, independent of the victim’s testimony, proved that the defendant used physical force to accomplish non-consensual sexual intercourse with the victim. All the witnesses who saw the victim on the night of the alleged crimes testified that she was clearly injured. The motorist testified that the victim was “bloody” and “scared to death.” The police officer testified that the victim’s right eye was swollen and bruised. The emergency room physician stated that the victim had numerous injuries consistent with forced sexual intercourse, including a bloody right eye that was swollen shut, a bloody nose, red marks on her forehead, several scratches on her right front thigh, several red marks on her throat, and dried blood on her head, hair, and perineum. Blood was found under all of the victim’s fingernails, and her perineum was slightly swollen and red.
The physical evidence in the apartment proved a forcible entry. A chair had been placed against the wall below the kitchen window. The window sill into the apartment was bent, and the screen to the kitchen window was damaged. Palm prints that were identified as belonging to the defendant were found on the kitchen sink facing inward from the kitchen window. The defendant’s shoes were found on the kitchen sink, and dirt on the shoes appeared to match the dirt in the victim’s backyard. Furniture had been knocked over in the apartment, and blood was found in approximately eight differ *184 ent areas on a bed sheet. Blood was also found on the •victim’s t-shirt.
The defendant’s story to the police was inconsistent with the physical evidence. The defendant told the police that he went to the victim’s apartment because he had obtained marijuana for her. However, no marijuana was found in the apartment, and the victim’s blood did not test positive for marijuana. Furthermore, although the defendant’s blood tested positive for cocaine, it showed no trace of marijuana. A forensic expert testified that marijuana would be present in a person’s blood for at least twenty-four hours after the last use. The police found recent bite marks on the defendant’s thumb, which were consistent with the victim’s claim that she had bitten it.
In light of the overwhelming evidence, the admission of Charles Gentry’s testimony that he claimed to have overheard a conversation between the defendant and victim tending to prove that they knew one another and discussed trading cocaine for sex would not have affected the jury’s guilty verdict. See Hanson, 14 Va.App. at 191, 416 S.E.2d at 24 (holding that certain hearsay statements that should have been excluded were nonetheless “inconsequential” in light of the overwhelming evidence of the accused’s guilt). The defendant testified that the victim let him into her apartment and that no violence occurred. However, a reasonable fact finder could not have inferred that the violence or battering of the victim occurred after consensual sexual intercourse. The physical evidence discredited the defendant’s testimony. See LaPrade v. Commonwealth, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950) (“[W]hat inferences are to be drawn from proved facts is within the province of the jury and not the court so long as the inferences are reasonable and justified”) (emphasis added).
Likewise, the trial court’s error did not affect the defendant’s sentence. The fact that the jury recommended the maximum sentence on all four counts does not require a finding that the error affected the jury’s sentence recommen *185 dations; rather, we must evaluate the seriousness of the error. See Yager v. Commonwealth, 220 Va. 608, 615, 260 S.E.2d 251, 256 (1979).
At the sentencing phase in this bifurcated trial, the Commonwealth proved that in 1993 the defendant had been convicted of sodomy and assault and battery; in 1991 he had been convicted of grand larceny and breaking and entering; in 1990 he had been convicted of driving as an habitual offender and possession of cocaine; in 1989 he had been convicted of petit larceny and escape; and in 1985 he had been convicted of breaking and entering.
The jury’s sentence recommendations were undoubtedly influenced by the brutality of the crimes against this victim and by the defendant’s record of multiple felony convictions. The verdict and sentences would not have been affected by the admission of Charles Gentry’s testimony that he purportedly overheard a conversation between the defendant and the victim.
In summary, the trial court did not err by refusing to admit Officer Berryman’s testimony about the defendant’s out-of-court statement indicating that he knew the victim. Furthermore, although it was error to exclude Charles Gentry’s testimony concerning the nature and subject matter of the conversation that he allegedly overheard, the error was harmless. Accordingly, we affirm the defendant’s convictions.

Affirmed.

. The defendant ultimately testified that he asked Officer Berryman if "Peggy [knew that he was] ... down at the police station.”