COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Humphreys and Petty
Argued at Chesapeake, Virginia


DANIEL DEWAYNE WREDE

MEMORANDUM OPINION[*] BY

v.        Record No. 0330-05-1                    JUDGE JAMES W. BENTON, JR.
                                                       JULY 18, 2006

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Vania M. O'Keefe, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


A jury convicted Daniel Dewayne Wrede of abduction with intent to defile, rape, forcible

sodomy, and two counts of object sexual penetration. Wrede contends the trial judge erred in

admitting into evidence a recorded telephone message left by the complaining witness and in

instructing the jury that it could consider character evidence about Wrede in determining his guilt or

innocence. For the reasons that follow, we affirm the convictions.

I.

This case arises from a sexual encounter between Daniel Dewayne Wrede and the

sixteen-year-old daughter of Wrede's romantic friend. The contested issue at trial was whether

the sexual acts were consensual.

Prior to trial, the admissibility of a recorded telephone message was the subject of a motion

*in limine*. The prosecutor informed the judge that the teenager had left a message for her boyfriend

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

after the sexual encounter.  The prosecutor argued that the recorded statements were admissible under several theories:  "an excited utterance about what's going on and her present sense impression of what's happening, it goes to the recent complaint exception under . . . [Code § ] 19.2-[2]68.2 to establish corroborative evidence of the fact of a complaint."  The prosecutor also proffered that the purpose for offering the recorded statements was to let the jury hear the tone of the teenager's voice and her demeanor, explaining "It's not what she's saying.  It's how she's saying it . . . that she's trying to maintain composure at the time right near or after the event."

Wrede's attorney argued that the recorded statement was hearsay.  The attorney further argued that it "was not admissible under the state-of-mind exception," was not an excited utterance, and "wouldn't even meet the recent complaint exception for rape or sexual assault because the actual statement doesn't . . . state a sexual assault or rape."

The trial judge ruled that the prosecutor could refer to the occurrence of the phone calls and that Wrede's counsel could "object to the use of the tape if the Commonwealth attempts to use it" at trial.  After the trial judge ruled on this and other motions, the trial began.  The trial judge later terminated the trial when he granted Wrede's motion for a mistrial.  The trial judge rescheduled the trial and began a new trial a month later.

At the second trial, the teenager testified that Wrede, aged thirty-three, forced numerous sexual acts on her the night of October 29, 2003, when her mother was at work.  The teenager was home alone and let Wrede into the house.  The teenager testified that Wrede immediately began hugging and kissing her after he entered the house.  He smelled of alcohol and appeared intoxicated.  She told him to stop touching her.  Instead, Wrede pushed her onto her mother's bed and got on top of her.  When she screamed for help, Wrede slapped her repeatedly.  As she attempted to escape, Wrede grabbed her, punched her, and dragged her by her hair.  She testified that, over the course of the night, he slapped and punched her, performed cunnilingus, penetrated

her vagina with his penis, forced her to perform fellatio, put his fingers in her anus, inserted a dildo into her vagina, and forced her to use the dildo on herself.

During an interlude, Wrede had her lay on the bed with him as he dozed. He kept his arms and a leg over her to prevent her from leaving the room. Later, Wrede made her shower with him. During the shower he began to cry and said, "I can't believe I did this." When they left the shower, Wrede cried and hugged her, telling her he did not want to hurt her. Wrede dressed and left.

The teenager called her boyfriend, leaving two recorded messages when he did not answer. She made the first call as soon as Wrede left her house. Without objection, she testified that her first message said, "Something happened and I really need you to come get me." The teenager dressed for school, but before she went to school, she called her boyfriend a second time less than an hour later. She testified without objection that she "left another message saying . . . something happened and [she] really need[ed] to talk to [him]."

The teenager's boyfriend testified that he deleted the first message, but not the second. He described the teenager's tone of voice in the two messages:

> Q: And how did she sound on the first message?
>
> A: The first message she was crying, very distraught. The second message she was calm at first, and as she spoke she got a little more agitated; and towards the end she sounded like she was on the verge of crying.
>
> Q: On the first message when she was crying, how did she sound compared to what she normally sounds like to you?
>
> A: Umm --
>
> Q: How was she different?
>
> A: She was, I would say, opposite of her normal demeanor. I mean, she's not --
>
> Q: What's her normal demeanor?

A: Well, you could say collected and calm. She doesn't get bothered very easily, and she was clearly not in a good state at the time.

Q: Had you ever heard her like that before?

A: No.

      \*      \*      \*      \*      \*      \*      \*

Q: Did you listen to the second message then?

A: Yes.

Q: And how did she sound then?

A: Calm at first and as the message progressed she got more and more upset.

Q: Had you heard her sound like that besides the first phone call ever before?

A: I mean, I heard her cry before but not that upset.

On motion of the prosecutor, without objection by Wrede's attorney, the trial judge admitted in evidence the audio recording of the second message:

> Hey me. Um, it's around seven o'clock. I'm getting ready to leave for school soon. Um. Yeah, something really, uh, big happened, and um, something you definitely, you know, be . . . it you wouldn't expect. But, um, it's pretty serious, and uh, and nobody knows. It's just me. And I just want, you know, to talk to you first, and you know get some advice and stuff. And I just really need somebody to talk to and help me out. Um, I was going to see if you'd come get me from, you know, like before I went to school, but . . .
>
> And your cell phone is I guess off. But um, if you could like, I have a game today, and um, we leave or are supposed to meet around three, and it's at Bayside. But if there is like any way that you could make it out here to come get me, um, that would really be great.
>
> And uh, I'm gonna try and keep my composure today but um I really need to see you. Okay. I love you Sweetie. Happy two years. Bye.

Both the teenager and her boyfriend testified that when they met at school that afternoon, she told him what happened. He took her home, where she reported the assaults to her mother.

Wrede testified that he did not realize that the teenager's mother would be at work when he went to the house. He said that after the teenager let him in the house, he noticed a half-empty wine cooler in the kitchen. They talked for a few minutes and then began kissing. He testified that she led him into her bedroom, where they engaged in numerous consensual sexual acts.

After the closing arguments, the trial judge gave the following instruction to the jury over Wrede's attorney's objection: "The Court instructs the jury that you may consider the character of the defendant when proven by the evidence, whether good or bad, along with the other facts and circumstances in the case determining his guilt or innocence."

The jury returned guilty verdicts for all of the charges.

II.

Wrede argues that the recorded statements were hearsay and that they did not meet the state of mind or present sense impression exceptions to the hearsay rule. The Commonwealth responds that the statements satisfied the state of mind exception and that any error in admitting the recorded statements was harmless. We hold instead that Wrede failed to preserve the issue for appeal.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, which is offered to prove the truth of the matter asserted." Clark v. Commonwealth, 14 Va. App. 1068, 1070, 421 S.E.2d 28, 30 (1992). "Unless [a statement] is offered to show its truth, an out-of-court statement is not subject to the rule against hearsay and is admissible if relevant." Church v. Commonwealth, 230 Va. 208, 212, 335 S.E.2d 823, 825 (1985).

> "Whether an extrajudicial statement is hearsay depends upon the
> purpose for which it is offered and received into evidence. If the

statement is received to prove the truth [or falsity] of its content, then it is hearsay and, in order to be admissible, must come within one of the many established exceptions to the general prohibition against admitting hearsay."

Brown v. Commonwealth, 25 Va. App. 171, 177, 487 S.E.2d 248, 251 (1997) (alteration in original, citation omitted). To apply these principles, trial judges "are often required to analyze the real purpose for which evidence is offered." Manetta v. Commonwealth, 231 Va. 123, 127, 340 S.E.2d 828, 830 (1986).

The trial judge's ruling on Wrede's motion *in limine* to exclude the recorded statement demonstrated his concern about the purpose for which the statements were to be offered.

> I think that under the statutory exception or the statutory authority of 19.2-268.2, [the rape complaint statute,] the fact that this complaint to the extent that . . . the victim is going to suggest that this was a complaint about what had occurred when viewed in context of what she was doing is admissible.
>
> I don't think the tape itself is admissible under that statute. The tape may become admissible during the course of the proceedings depending upon the other evidence that is provided that might lay the foundation for its admission including not only testimony in the Commonwealth's case in chief but the position the defense takes with regard to the circumstances surrounding the events from the extent to which this may be some attempt to fabricate circumstances, so it all may become relevant in that context.
>
> And it may become relevant for the trier of fact, in this case the jury, to actually hear and judge the, in fact, demeanor of the declarant on the tape; that is, whether or not she is excited, whether or not they perceive her to be excited, whether or not they perceive it to be a statement or statements that were made in that context. The context in which the Commonwealth suggests it should be considered as opposed to perhaps the contents -- or context of which the defense may try to suggest it should be considered. I don't think I can determine that until we have some additional evidence. *Until I hear from the witnesses at this point, I don't think I can make that preliminary determination on the admissibility of the tape.*
>
> So unless counsel wants to do that -- at this point go through all of that -- what I would suggest is that the Commonwealth is permitted to refer to the conversations in its opening statement and the Commonwealth may attempt to admit the tape once the

foundation for doing so has been laid through the appropriate
witnesses if the Commonwealth believes it is admissible, but that
the Commonwealth would not be permitted to play the tape at this
point during its opening statement.

(Emphasis added).

After the trial judge announced this ruling, the following colloquy occurred:

[THE COURT]:  Is that acceptable to the Commonwealth?

MS. ORSINI:  Yes, Judge.

THE COURT:  Ms. Orsini and Mr. Richards.

Mr. Clark, [Wrede's attorney,] I know you object and take
exception to the court's ruling that the --

MR. CLARK:  Yes, Judge.

THE COURT:  -- that the conver -- the phone calls themselves are
admissible for the reasons that you stated, and the court will note
your exception to the court's ruling.  You still will -- *As I indicated
in my remarks as I implied just now, Mr. Clark, you will be
permitted to object to the use of the tape if the Commonwealth
attempts to use it during the course of its case in chief, and your
objections in that regard would still be considered by the court.*

MR. CLARK:  Your Honor, also I would just ask procedurally if
they at a later time do try to introduce the tape, that we take a break
and have that -- that section done out of the presence of the jury.

THE COURT:  We'll see how it comes up and what context.  If
that becomes appropriate, Mr. Clark, just renew that request, and
we will deal with it.

MR. CLARK:  Thank you.

(Emphasis added).

Wrede's first trial on these charges ended in a mistrial on October 21, 2004.  Prior to the

commencement of the second trial, the trial judge stated the following agreement on the record:

There were various pretrial motions that were made prior to the
trial in the last trial in this matter that ended in a mistrial, motions
in limine and other motions.

My understanding is that counsel have agreed that, in essence,
*all of those motions would be deemed to be renewed at this time*

- 7 -

*and that the rulings of the court would be considered to be the same on each of those - - each of those motions.* But the record will be protected to indicate that the issues have previously been raised *and any exceptions noted to the court's rulings for all of the reasons previously stated at the prior hearing on those motions will be preserved for purposes of the trial today.*

Is that the Commonwealth's understanding?

MR. RICHARDS: Yes, Your Honor.

THE COURT: Mr. Clark and Ms. Fabbrizi[, Wrede's trial attorneys].

MS. FABBRIZI: Yes.

(Emphasis added).

Thus, the record discloses that, when the trial judge earlier ruled on the motion *in limine*, he noted that the prosecutor had indicated she would offer the evidence to allow the jury "to actually hear and judge . . . the demeanor of the declarant on the tape; that is, whether or not she is excited, whether or not they perceive her to be excited."[1] The judge ruled that he could not "determine that until [he] hear[d] from the witnesses." Therefore, he ruled that the prosecutor could only refer to the existence of the tape in her opening argument and that Wrede's attorney should object at trial to its admissibility so that the judge then could consider the evidence and the objection in the context of the testimony produced at trial. The trial judge's statement at the commencement of the second trial incorporated that ruling.

Although Wrede's trial attorney objected to the admission of the recorded statements at the first trial, which ended in a mistrial, the record reflects no objection at the second trial to the

---

[1] The contested issue in this case was whether the teenager consented to the sexual acts. "[T]he issue of consent concerns a victim's state of mind . . . ." Commonwealth v. Minor, 267 Va. 166, 176, 591 S.E.2d 61, 68 (2004). "Generally, statements made by a crime victim that show the victim's state of mind are admissible as an exception to the hearsay rule, provided the statements are relevant and probative of some material issue in the case." Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001).

admissibility of the recorded statements.  Indeed, when the prosecutor offered the recorded

statement as evidence at the second trial, the following occurred:

> [THE PROSECUTOR]:  I'm showing -- you've previously seen
> this item before; is that correct?
>
> A:  Yes.
>
> Q:  And what is this item?
>
> A:  Recording from the message on the machine.
>
> [PROSECUTOR]:  Judge, I would have you mark it, but it won't
> fit in the machine.  I'm going to play it just for a second.  See if I
> can.  Judge, we have the transcript of this.  I would request that we
> also allow the jury to see the transcript.
>
> THE COURT:  Any objection, Ms. Fabbrizi[, Wrede's attorney].
>
> MS. FABBRIZI:  No objection, Your Honor.
>
>          *      *      *      *      *      *      *
>
> [PROSECUTOR]:  Whose voice was that on that machine?
>
> A:  [The teenager's].
>
> [PROSECUTOR]:  I'd like to introduce that as Commonwealth's
> 18.
>
> THE COURT:  Any objection?
>
> MS. FABBRIZI:  No objection.
>
> THE COURT:  All right.  The audio tape recording just played will
> be admitted as Commonwealth's Number 18.[2]

Rule 5A:18 requires "an objection [to] be made when the occasion arises— at the time

the evidence is offered or the statement made."  <u>Marlowe v. Commonwealth</u>, 2 Va. App. 619,

---

[2] At this point in the trial, the context for the recorded statement had been established. The teenager had already testified without objection that she called her boyfriend and first left a message "saying . . . something happened and I really need you to come get me."  She testified she "was crying pretty much the whole morning."  She then called her boyfriend a second time and "left another message saying, . . . something happened and [she] really need[ed] to talk to [him]."  The teenager's boyfriend also had testified without objection that the teenager was distressed and upset when she left the messages on this telephone recorder.

621, 347 S.E.2d 167, 168 (1986). Complying with Rule 5A:20(c)'s requirement that the brief contain "a clear and exact reference to the page(s) of the transcript . . . where each question was preserved in the trial court," Wrede's brief denotes the page in the transcript of the first trial as the place where Wrede's attorney objected to the prosecutor's offer of the recorded statement as a trial exhibit. The Supreme Court's decision in Elliott v. Commonwealth, 267 Va. 396, 593 S.E.2d 270 (2004), addresses an analogous circumstance:

> [A] defendant may not rely upon objections made at an aborted trial to preserve issues for appeal following his conviction in a subsequent trial. . . . In the absence of a ruling in the second trial adopting the rulings of the aborted trial, the defendant is required to renew his motions with specificity in order to preserve the record of the trial court's rulings and the defendant's objections thereto for any subsequent appeal of the retrial.

Id. at 428, 593 S.E.2d at 290.

Because no objection was timely made when the prosecutor offered the recorded statement into evidence at the second trial, Wrede has not preserved this issue for appeal. See id.; see also Marlowe, 2 Va. App. at 621, 347 S.E.2d at 168.

### III.

Wrede argues that the jury instruction on his character was improper because he did not introduce any character evidence. The Commonwealth agrees that the instruction was improperly given. The Commonwealth contends, however, that there was no evidence in the record that "created the risk that the jury could misapply this instruction" and that, in any event, the error was harmless.

If a trial judge improperly gives an instruction on character when character is not an issue at trial, the error is not a constitutional error. See Poole v. Commonwealth, 211 Va. 262, 265-67, 176 S.E.2d 917, 919-20 (1970); see also Greer v. United States, 245 U.S. 559, 560-61 (1918) (discussing the evidentiary rule that the prosecution cannot introduce character evidence until the

- 10 -

defendant has done so). Thus, the non-constitutional standard of review governs our determination whether the error was harmless.

The harmless error test for non-constitutional error is as follows:

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). The Supreme Court of Virginia adopted the Kotteakos test "in the light of Code § 8.01-678," which provides, in pertinent part, the following:

> When it plainly appears from the record and the evidence given at trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

In this case, the trial judge told the jury they could "consider the character of the defendant *when proven by the evidence.*" (Emphasis added). Character evidence is evidence tending to show the general reputation of the accused in the community. Chiles v. Commonwealth, 12 Va. App. 698, 699-700, 406 S.E.2d 413, 414 (1991). None of the evidence tended to show Wrede's reputation in the community, and thus none of the evidence was character evidence.

The only facts possibly considered by the jury as character evidence were that Wrede was intoxicated, used a sex toy, and had sex with a sixteen-year-old girl, even if consensual. And, yet, even if the jury considered these facts to be character evidence, this was testimonial evidence about the facts and circumstances of this case that the jury had to weigh in considering the credibility of the witnesses. We hold, therefore, that the instruction could not have

- 11 -

substantially swayed the jury and that the trial judge's error in giving the instruction was harmless.  See Clay, 262 Va. at 260, 546 S.E.2d at 731-32.

For these reasons, we affirm the convictions.

Affirmed.