COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia

JA'RON RUSSELL TURNER

                               MEMORANDUM OPINION[*] BY

v.     Record No. 0034-16-1         JUDGE RICHARD Y. ATLEE, JR.
                                     MARCH 7, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Louis R. Lerner, Judge Designate

Charles E. Haden for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Following a bench trial, a judge of the Circuit Court of the City of Newport News

convicted Ja'Ron Russell Turner of robbery, carjacking, and two counts of using a firearm in the

commission of a felony. On appeal, Turner asserts that the evidence was insufficient to prove

that he was the perpetrator of the crimes and that the trial court erred when it considered hearsay

testimony. We affirm Turner's convictions.

I. BACKGROUND

A. The Crime

"[U]nder familiar rules, we must consider the evidence in the light most favorable to the

Commonwealth, the successful litigant in the trial court." Leigh v. Commonwealth, 192 Va.

583, 587, 66 S.E.2d 586, 589 (1951). In March of 2014, two men robbed Alonzo Epps near his

Newport News apartment. Epps testified that when he approached his mailbox that evening,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Turner and another man offered to pay Epps fifty dollars to drive them to a movie theater in Hampton. Epps agreed, and returned to his apartment for his wallet and car keys. When he came outside again, Turner pointed a gun at him. Epps described the gun as a nine-millimeter handgun. The other man demanded Epps's keys, wallet, and phone. Epps turned over his property, including the keys to his Chevrolet Impala, which was parked nearby. The two men ordered Epps onto the ground, then got into his car and drove away. During the robbery, the perpetrators were standing five feet from Epps, and nothing obstructed his view of them. According to Epps, both men were wearing "black jackets, T-shirts, [and] jeans" at the time of the robbery.

B. The Arrest

Within hours of the robbery in Newport News, Officer J. Umbel of the Richmond City Police Department attempted to make a traffic stop of a Chevrolet Impala that was operating without headlights in the City of Richmond. As Officer Umbel tried to stop the car, four people exited it and ran. At first Officer Umbel ran after the driver, but soon he had to return to help other officers stop the car, which though empty was still moving. Officer Umbel testified that another officer stopped and detained Turner approximately two blocks away from the Chevrolet Impala, after that officer "saw Mr. Turner and another male coming out of a backyard." Officer Umbel testified that the other officer observed that Turner was out of breath, "dirt-covered, [and] wearing] black clothing." Turner's trial counsel objected that Officer Umbel's recitation of what the other officer saw and did was hearsay, but the trial court overruled the objection. The trial court explained that it allowed Officer Umbel's testimony to the out-of-court statements of the other officer "for the purpose of trying to get [Officer Umbel] to the point where he could tell me what he said to [Turner]."

Officer Umbel then testified to his own observations: Turner was "wearing a black jacket" and had "dirt on his T-shirt." Additionally, when Officer Umbel first saw Turner, he "was still panting heavily." After Turner provided identifying information, the police determined there was an outstanding warrant for his arrest. Searching Turner incident to arrest for that warrant, police found two of Epps's stolen credit cards and a loaded nine-millimeter handgun. The police also confirmed that the Chevrolet Impala Officer Umbel had tried to stop was Epps's car.

## C. The Identification

The day after the robbery, Epps viewed a photographic lineup containing seven pictures, including Turner's. Epps did not identify Turner, selecting another man's photograph instead. Over a year and half later, at trial, Epps identified Turner as the man who had robbed him with the gun. He explained that, "[a]t the time [of the robbery] Mr. Turner had a messed up eye," so he had selected a photograph of a man who "looked just like him [and] had a messed up eye." Officer Umbel testified at trial that on the day of Turner's arrest, Turner "had some medical condition with his eye that looks like it's cleared up." The officer who conducted the photographic lineup testified that when he first saw Turner, he "had like a droopy eye or a pink eye." A photograph of Turner taken immediately after his arrest (but not used in the photographic lineup) confirms that Turner's left eye appears to be swollen. The photograph of Turner used in the photographic lineup was not taken contemporaneously with the crime, but was an older photograph that did not depict him with an eye condition.

At trial, Epps was confident that Turner was the gun-wielding perpetrator: "I looked at him when he had the gun in his hand. I looked at him when he pointed the gun at my leg and I'm looking at him now. . . . [W]hen a situation like that happens, you never forget the face, you never forget distinctive features." The trial court convicted Turner of all four crimes, and

sentenced him to a total of thirty-eight years in the penitentiary, suspending all but eight years of mandatory minimum time. Turner then appealed.

## II. ANALYSIS

### A. Sufficiency

Turner challenges the sufficiency of the evidence to support his convictions. Specifically, he contends the evidence was insufficient to identify him as one of the perpetrators. "When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also Code § 8.01-680. Because "we must consider the evidence in the light most favorable to the Commonwealth," Leigh, 192 Va. at 587, 66 S.E.2d at 589, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom," Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991).

"The factors set forth in Neil v. Biggers, 409 U.S. 188 (1972), are used to determine 'whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt' the identity of the perpetrator." Cuffee v. Commonwealth, 61 Va. App. 353, 364, 735 S.E.2d 693, 698 (2013) (quoting Brown v. Commonwealth, 37 Va. App. 507, 522, 559 S.E.2d 415, 423 (2002)).

> [T]he factors to be considered in evaluating the likelihood of
> misidentification include the opportunity of the witness to view the

criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Id. (quoting Biggers, 409 U.S. at 199-200). "In evaluating the reliability of the identification, this Court looks to the totality of the circumstances." Id. at 364, 735 S.E.2d at 699.

Epps had two opportunities to view the robbers: when they approached him seeking a ride and after he returned from his apartment with his wallet and keys. Epps testified that the two men were five feet from him during the robbery and that he had a clear view of them. He was certain that Turner was the gunman, testifying that "when a situation like that happens, you never forget the face, you never forget distinctive features." Although Epps initially identified another man in the photographic lineup, his explanation of this misidentification (that it was influenced by Turner's eye condition at the time of the crime) was corroborated by two different police officers. Furthermore, although Epps's in-court identification of Turner occurred over a year and a half after the crime, the identification was corroborated by other evidence. When police apprehended Turner, within hours of the crimes, Turner had two of Epps's stolen credit cards and a nine-millimeter handgun on his person. Turner was out of breath, consistent with someone who had exited the Chevrolet Impala and fled after Officer Embel tried to stop that car. Finally, Turner was wearing clothes consistent with Epps's description of the perpetrators. Considering all the facts and circumstances, the trial court was not plainly wrong when it found the evidence sufficient to prove beyond a reasonable doubt that Turner was one of the perpetrators and that he was guilty of the charged offenses.

## B. Hearsay

Turner argues the trial court erred by admitting hearsay testimony when it allowed Officer Umbel to testify to "information or assertions obtained from another officer" who was not present at trial. "The admissibility of evidence is within the broad discretion of the trial

court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).

"Hearsay is '[a] statement other than one made by the declarant while testifying at trial—offered in evidence to prove the truth of the matter asserted.'" Brown v. Commonwealth, 25 Va. App. 171, 177, 487 S.E.2d 248, 251 (1997) (*en banc*) (quoting Black's Law Dictionary 649 (5th ed. 1979)). "Hearsay evidence is inadmissible at trial unless it falls into one of the recognized exceptions to the rule." Clay v. Commonwealth, 33 Va. App. 96, 104, 531 S.E.2d 623, 626 (2000) (*en banc*), aff'd, 262 Va. 253, 546 S.E.2d 728 (2001).

Turner maintains that Umbel's testimony regarding the observations of the officer who detained Turner was hearsay. Officer Umbel testified that another officer stopped and detained Turner approximately two blocks away from the Chevrolet Impala, after that officer saw Turner emerge from a backyard, out of breath and wearing dirty black clothes. However, as the trial court found, Umbel's testimony was not offered for the truth of the matters asserted, but to explain Umbel's actions subsequent to Turner's detention. Because the trial court did not admit Officer Umbel's testimony for the truth of the matters asserted, that portion of his testimony was not hearsay at all. "The hearsay rule does not operate to exclude evidence of a statement . . . offered for the mere purpose of explaining or throwing light on the conduct of the person to whom it was made." Upchurch v. Commonwealth, 220 Va. 408, 410, 258 S.E.2d 506, 508 (1979) (quoting Fuller v. Commonwealth, 201 Va. 724, 729, 113 S.E.2d 667, 670 (1960)). Because such evidence is "admitted not for the purpose of showing the guilt or innocence of the defendant[,] but for the purpose of showing the reason for the police officers' action in arresting him" it will not be excluded on hearsay grounds. Id.

The evidence to which Turner objected was not offered for the truth of the matters asserted and, thus, was not hearsay. For that reason, the trial court did not abuse its discretion in admitting such testimony.

### III. CONCLUSION

We affirm Turner's convictions. First, the evidence, including Epps's identification of Turner, was sufficient to find Turner guilty. Second, the out-of-court statements to which Officer Umbel testified were not offered or admitted for the truth of the matters asserted, and thus were not hearsay.

<u>Affirmed.</u>