COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference

CAINE CALIF DAVIS

v.        Record No. 1134-20-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
SEPTEMBER 28, 2021

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge Designate

Charles C. Cosby, Jr. (Kevin E. Calhoun; Charles C. Cosby, Jr., P.C.,
on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

A grand jury indicted appellant Caine "CJ" Davis ("Davis") for several offenses

including the first-degree murder of Troy Barnett ("Barnett") in violation of Code § 18.2-32,

conspiracy to commit murder in violation of Code § 18.2-22, the aggravated malicious wounding

of Laura Gomez de la Cruz ("de la Cruz") in violation of Code § 18.2-51.2(A), and two counts of

use of a firearm to commit a felony in violation of Code § 18.2-53.1.  During Davis' three-day

jury trial, the Circuit Court of Stafford County ("circuit court") conditionally admitted certain

statements under the co-conspirator exception to the rule against hearsay over Davis' objection

but later sustained Davis' motion to strike the conspiracy to commit murder charge.

Nevertheless, the circuit court declined to hold that the statements were inadmissible.  The jury

subsequently convicted Davis of first-degree murder, aggravated malicious wounding, and two

counts of firearm violations.  On appeal, Davis argues that the circuit court erred by overruling

his objection to alleged hearsay statements made by a supposed co-conspirator during his trial.

# I. BACKGROUND

In accordance with familiar principles of appellate review, we state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)). In doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. Id. at 473.

On July 3, 2019, police responded to reports of two gunshot victims at the "5 Twelve" convenience store. The police found the two victims, Barnett and de la Cruz laying on the pavement in the parking lot of the store. Both suffered gunshot wounds to the head and face areas. While de la Cruz survived, Barnett later died from his injuries.

Approximately one week prior to the shooting, Barnett had attempted to sell drugs to Davis and Rustam Fardin ("Fardin"). Instead of purchasing the drugs from Barnett, Davis and Fardin brandished firearms and robbed Barnett of his money and drugs. Following this encounter, Barnett posted comments on social media "dissing" Davis.

On the day of the shootings, Christopher Walters ("Walters"), a friend of Davis, testified that Davis reacted angrily to Barnett's comments on social media and told Walters that he was going to shoot Barnett. That same day, Davis and Walters met with Fardin and drove to Fardin's home. Davis and Fardin entered the residence and remained there for several hours. At trial, Destiny Heiston ("Heiston"), a mutual friend of the three men, testified that she received a

Snapchat[1] communication from Fardin on the day of the shooting asking her to contact Barnett

through her account.  Specifically, Heiston testified as follows:

> Q  [W]hy were you told by [Fardin] to add [Barnett]?
>
> A  To ask him how much five bars of Xanax were.
>
>  . . . .
>
> Q  And did he tell you why you were needed and why he just didn't ask himself?
>
> A  He said that he doesn't really like to sell to girls that much.
>
> Q  But you're a girl.
>
> A  I meant boys.  He didn't like to sell to boys that much.
>
>  . . . .
>
> Q  And did you ultimately message [Barnett] like [Fardin] asked you to do?
>
> A  Yes, sir.
>
>  . . . .
>
> Q  Okay.  And what did you – what were you told to tell [Barnett], if anything?
>
> A  I was told to tell him that I was five minutes from the McDonald's . . . .

Following this exchange, Heiston gave Fardin her Snapchat account information so that

Fardin could continue the conversation with Barnett.  In addition, the Commonwealth admitted

photographs of Barnett's phone showing transcripts of his conversation with "Des" (understood

to be Fardin using Heiston's Snapchat username).  In those conversations, Fardin, using

Heiston's Snapchat account, asks Barnett "What car are you in[?] . . . i'm in a red Toyota."

---

[1] Snapchat is a mobile phone communications application.  One of its core concepts is that any picture, video, or message that is sent to others—by default—is made available to the receiver for only a short time before it becomes inaccessible.

Prior to the Commonwealth eliciting this testimony, Davis objected to the introduction of the statements from Fardin to Heiston and Fardin to Barnett as inadmissible hearsay. Davis did not object to Heiston's testimony regarding her own statements to Barnett or Fardin. The Commonwealth argued that the statements were admissible under the co-conspirator exception to the hearsay rule. The circuit court conditionally admitted the testimony under that exception subject to the Commonwealth presenting evidence of a conspiracy.

At the close of the Commonwealth's evidence, Davis moved to strike the conspiracy to commit murder charge on the grounds that the prosecution had not established that Davis and Fardin had agreed to murder Barnett. The circuit court sustained the motion to strike the conspiracy charge. The circuit court explained:

> So I've listened very carefully, and as late as this morning, having examined the notes I've taken in the course of this testimony at great length, the Court certainly suspects that this whole deal was set up to facilitate a drug deal. What the ultimate conclusion was, whether it was a robbery or whether it was a murder is not so clearly established. But that's all I've got is a suspicion. I cannot find that the evidence that's been presented here is sufficient to allow this jury to speculate as to an agreement for which there's no evidence.

Davis then moved to strike the "evidence of [Fardin's] Snapchat conversations," which "had been tied to the presence or absence of the conspiracy." The circuit court denied this motion, reasoning that,

> I think that evidence is sufficient and properly before the jury just as evidence of the communications and the contact between these parties. The fact that the Court has concluded that taken together doesn't constitute evidence of a conspiracy does not in and of itself make it irrelevant or immaterial.

Davis asked whether the circuit court was employing the co-conspirator exception to the hearsay rule and the circuit court stated: "I find the evidence is admissible given all the circumstances I've heard thus far as it was presented."

Davis appealed and argues that the circuit court erred in overruling his renewed objection to Heiston's testimony about Fardin's hearsay statements as the evidence failed to prove a *prima facie* case of conspiracy under the co-conspirator exception.

II. ANALYSIS

Appellate courts review the admissibility of evidence "under an abuse of discretion standard." Thomas v. Commonwealth, 279 Va. 131, 172 (2010). When evaluating whether a trial court abused its discretion, the appellate court "considers only whether the record fairly supports the trial court's actions." Grattan v. Commonwealth, 278 Va. 602, 620 (2009).

Davis argues that the circuit court erred in overruling his renewed objection to Heiston's testimony about Fardin's hearsay statements as the evidence failed to prove a *prima facie* case of conspiracy. In response, the Commonwealth argues that the statements were properly admitted pursuant to the co-conspirator hearsay exception asserting that the foundational burden on the Commonwealth for admitting such evidence is less than its burden of establishing a *prima facie* case of conspiracy for the purposes of a motion to strike the evidence. However, we need not reach this issue because the testimony in controversy was not hearsay at all.

When a hearsay objection is made during a trial, it is often the case that the first instinct of even experienced trial attorneys and judges is to immediately consider whether any of the many exceptions to the rule against hearsay apply without considering whether the statements actually constitute hearsay in the first place.

Hearsay is an out-of-court statement offered for the truth of the matter asserted therein. Va. R. Evid. 2:801(c). The reasons for excluding such statements are well-documented in the Anglo-American legal tradition. E.g., Newberry v. Commonwealth, 191 Va. 445, 461 (1950); Edmund M. Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv. L. Rev. 177, 179-84 (1948). Live testimony allows a trier of fact to observe the demeanor of the

declarant.  Morgan, <u>supra</u>, at 196.  Additionally, the declarant is placed under oath and subject to cross-examination.  <u>Id.</u> at 182.  The hearsay prohibition is thus a response to the fear that triers of fact will improperly weigh the credibility of such out-of-court statements.  In other words, hearsay is "evidence which derives its value, not solely from the credit to be given the witness on the stand, but in part from the veracity and competency of some other person."  <u>Chandler v. Graffeo</u>, 268 Va. 673, 682 (2004).

Therefore, not all out-of-court communications are hearsay.  First, the rule only reaches "statements."  The Virginia Rules of Evidence define a statement for purposes of the hearsay rule as "an oral or written assertion."  Va. R. Evid. 2:801(a).  In other words, if the declarant states something that cannot be proven true or untrue—*i.e.* does not make an assertion—then the trier of fact is not asked to make a credibility determination and the purpose of the hearsay rule is not served by exclusion.  <u>See</u> <u>Brown v. Commonwealth</u>, 25 Va. App. 171, 178 (1997).

Additionally, statements are only inadmissible hearsay if they are offered for a particular purpose:  to prove the truth of the matter asserted therein.  If the value of the evidence is not tied to its credibility—*i.e.* is not offered for its truth—then the hearsay rule does not operate to exclude it.  <u>See</u> <u>Winston v. Commonwealth</u>, 268 Va. 564, 591 (2004).

Therefore, when considering a hearsay problem, courts must first determine whether an out-of-court declaration asserts any fact.  If they do not, then the inquiry ends, and the hearsay rule does not prohibit the trier of fact from considering the words.  Next, if the out-of-court declaration is a factual assertion and thus satisfies the definition of a statement, the court must then determine the purpose for which it is admitted.  If the words are offered for their truth, the statements should properly be classified as hearsay, and only then must the court consider if the statements fall within one of the exceptions to the hearsay rule.  If the statements are not offered for their truth, based on the context and other evidence in the case, including the actual use by

the proponent at trial, then the statements are admissible unless they run afoul of some other evidentiary rule. See Hodges v. Commonwealth, 272 Va. 418, 432 (2006); Winston, 268 Va. at 591.

Both our Supreme Court and this Court have provided examples of permissible non-truth purposes for which a proponent may offer out-of-court statements. For example, in Fuller v. Commonwealth, 201 Va. 724 (1960), the Virginia Supreme Court ruled that out-of-court statements are admissible to prove the conduct of the parties in the case. Id. at 729. In that case, the Court ruled that statements made by an alleged assault victim to police were not admissible to prove that an assault happened at the hands of the defendant but were admissible to explain to the jury why the police interacted with the defendant at all. Id.; see also Testa v. Commonwealth, 55 Va. App. 275, 279 n.1 (2009) (holding that a statement that defendant was armed and dangerous was not offered to prove that fact, but simply to explain the officer's reaction to that information).

However, the mere incantation that the statements are not offered for their truth is not sufficient for a court to admit such statements; the actual use at trial by the proponent is a relevant consideration when determining the purpose for which an out-of-court statement is offered. For example, in Donahue v. Commonwealth, 225 Va. 145, 152 (1983), the Supreme Court held that the Commonwealth improperly used a written note that had been admitted for a proper non-hearsay purpose when it repeatedly argued the truth of the note's contents instead.

Of course, courts are often faced with situations where a statement could be relevant both for its truth as well as for some other, non-hearsay purpose. In such circumstances, "it should be remembered that it is a time-honored principle of evidence law that, in general, if evidence is admissible for any purpose, it is admissible." Brown, 25 Va. App. at 178. Therefore, if a hearsay statement has legitimate probative value that is unrelated to the truth of the matters

asserted, it should be admitted even if it *could also* be offered to prove the truth asserted (absent a showing that such evidence is inadmissible under some other rule of evidence).

Fardin's out-of-court statements can be separated into two categories: non-assertive inquires or instructions, and express assertions of fact.

First, the majority of Fardin's out-of-court statements contain no factual assertions whatsoever but are instead non-assertive inquiries or instructions. While inquiries can constitute assertions of fact if they are intended or argued by counsel as such, that is plainly not the case here. See id. at 177 (holding that the question "Does Peggy know I am here?" was hearsay when it was offered to prove, by implication, that the declarant knew "Peggy"). Fardin's requests to Heiston ("ask Barnett how much five bars of Xanax are"; "tell Barnett you are five minutes from the McDonald's") do not assert any fact that can be proven true or untrue, nor do they impliedly assert some fact that can be proven true or untrue. Therefore, it was impossible for these statements to be offered for their truth. Similarly, Fardin asking Barnett what car he was in is clearly not an assertion of fact. Because Fardin did not assert anything in these inquiries, the jury could not have possibly considered them for their truth and the hearsay rule did not prohibit their admission.

The second category is Fardin's assertions of fact. The Commonwealth offered two statements which were unambiguously assertions of fact: Fardin's assertion to Heiston that Barnett did not like selling to boys and Fardin's assertion to Barnett—via Heiston's Snapchat account—that he was in a red Toyota.

The first assertion—that Barnett did not like to sell drugs to boys—was not offered for its truth. The value of this evidence is not derived from whether the jury believed that Barnett did or did not like selling to boys. Instead, just as the witness complaint in Fuller was used to explain why the police approached the defendant in that case, Fardin's assertion to Heiston helps

explain why Heiston assisted Fardin in contacting Barnett.  See Fuller, 201 Va. at 729.  Even if

the statement could have been offered to prove that Barnett did or did not like selling to boys,

there was also a permissible non-hearsay purpose for their introduction, and, unlike the

prosecutor in Donahue, the Commonwealth never argued that the jury should consider the

impermissible inference.

Fardin's second assertion is his statement to Barnett that he was in a red Toyota.  This

statement was not offered for its truth; the value of the evidence is not derived from whether the

jury believed that Fardin was in a red Toyota.  Indeed, other evidence at trial showed that Fardin,

Davis, and Walters were in a black Infiniti.  Instead, the statement showed that there were

ongoing communications between Fardin and Barnett in the minutes leading up to the shooting.

It is clearly relevant that Fardin was speaking with Barnett using a pseudonym in the hours

before the killing regardless of the truthfulness of the communications.  Therefore, unless the

Commonwealth actually used the statements to prove that Fardin was in a red Toyota, it was

entitled to present the statements to the jury for any other relevant purpose.

Davis argues that the Commonwealth offered Fardin's Snapchat communications with

Heiston and Barnett to prove that Fardin and Davis set up a fraudulent drug deal in order to lure

Barnett into an ambush killing.  However, careful review of Heiston's testimony reveals that at

no point in Fardin's conversations with either Heiston or Barnett does Fardin ever make this

assertion.  Most of Fardin's out-of-court statements simply contain no assertions at all, and the

statements that are assertions were not offered for their truth; therefore, the jury was entitled to

consider them.

In overruling Davis' motion to exclude Fardin's statements as hearsay despite striking the

conspiracy charge, the circuit court ruled that these statements were admissible "as evidence of

the communications and the contact between these parties." We conclude that this ruling was correct for the reasons stated above.[2]

## III. CONCLUSION

Finding no reversible error in the circuit court's decision to admit Fardin's out-of-court statements, we affirm the judgment of the circuit court.

Affirmed.

---

[2] In any event, even if the circuit court's decision was based on the application of the co-conspirator exception to the hearsay rule as Davis argues was the case, we would nevertheless affirm under the right result for a different reason doctrine. See Perry v. Commonwealth, 280 Va. 572, 579 (2010).