IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

FEB 17 2012

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2011-0028 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| RICHARD LEE PALMER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20100696001

Honorable John S. Leonardo, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
 By Kent E. Cattani, David A. Sullivan,
 and Nicholas Klingerman

Tucson
Attorneys for Appellee

Robert J. Hirsh, Pima County Public Defender
 By Rebecca A. McLean

Tucson
Attorneys for Appellant

B R A M M E R, Judge.

¶1   After a jury trial, appellant Richard Palmer was convicted of possessing nine grams or more of methamphetamine for sale. Palmer admitted having one historical prior felony conviction, and the trial court sentenced him as a category two repetitive

offender to a mitigated prison term of 4.5 years. On appeal, Palmer maintains (1) the court erred in allowing inadmissible hearsay evidence over his objection, (2) the admission of hearsay was not harmless, and (3) there was insufficient evidence to support his conviction. For the following reasons, we affirm.

## Background

¶2 We view the facts, and reasonable inferences from the facts, in the light most favorable to sustaining the jury's verdict. *State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App. 2008). On February 6, 2010, Palmer was taken to the hospital after crashing his motorcycle in a single-vehicle accident. While inventorying Palmer's possessions, B.C., a hospital employee, found a baggie containing white rocks that resembled "rock candy" and gave it to a police officer. The baggie contained 12.57 grams of methamphetamine.

## Discussion

### Admission of Hearsay

¶3 We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Id.* ¶ 7. In opening statements, the prosecutor told the jury the evidence would show B.C. had "inventorie[d] the things . . . brought in" with Palmer, including his "clothing, shoes, wallet, those types of things"; she had found the baggie containing methamphetamine in Palmer's right front pants' pocket; and she had given the baggie to a police officer. In contrast, Palmer told the jury the evidence would establish B.C. had found the baggie in a backpack near the door of Palmer's trauma bay and gave it to hospital security personnel, and two women later "c[a]me up and [went] through the

2

backpack and t[ook] the backpack away." According to Palmer's opening statement, the methamphetamine

> didn't come from anybody's pants. It didn't come from [Palmer,] and [B.C.] never had a conversation with [him] about the backpack, about who owned it or about this baggie. All she knows is that two women came in and took the backpack away and it's gone. There's nothing . . . [to] show Mr. Palmer was in possession of any drugs, dangerous or otherwise.

¶4 At trial, B.C. testified she had discovered the baggie containing methamphetamine in a backpack that had been transferred from the ambulance that brought Palmer to the hospital to Palmer's emergency room trauma bay. During cross-examination, defense counsel elicited B.C.'s testimony that the backpack had not been inventoried along with Palmer's other belongings but had been removed by two women who had come to Palmer's trauma bay after B.C. had found the baggie of methamphetamine and had given it to the officer.

¶5 During redirect examination, the state asked B.C. about the two women who had removed the backpack from the trauma bay and referred her to the transcript of her earlier interview with the state and defense counsel. Palmer's counsel objected, explaining to the trial court that he was "anticipating . . . hearsay," because the portion of the interview transcript identified had included B.C.'s report of what the women had said. Despite no ruling from the court, the state acknowledged counsel's concern and the following ensued:

> Q. . . . . And going back again, you had told this jury that two women had come in to take the backpack. Did they ask,

3

without telling me what they said, did they ask Mr. Palmer about taking the backpack?

A.     I can recall they asked, where is your backpack.

Following B.C.'s answer, Palmer renewed his objection, saying "Judge, I would object," and the court, stating "it's not offered for the truth of the matter stated," overruled the objection. B.C. then repeated, "I recall them asking where his backpack was."

¶6        On appeal, Palmer argues the trial court erred in allowing B.C.'s testimony about what the women said before they took the backpack, contending that, although phrased as a question, their words "contain[ed] an assertion . . . that the backpack belong[ed] to Mr. Palmer," and were "analytically no different than had the women said, 'We are taking your backpack.'" The state responds that Palmer "opened the door" to B.C.'s testimony by asking about the women who removed the backpack from the trauma bay and, therefore, cannot assign error to the admission of their statements;[1] that the evidence was not hearsay because it was offered to explain the backpack's removal rather than to establish Palmer's ownership of it; and that, if error occurred, reversal is not required because other independent evidence linked Palmer to the backpack.

¶7        The statement the women made was not intended as an assertion and thus was not inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ariz. R. Evid. 801(c). A "statement" is further defined as either "an

---

[1]Because we determine the evidence was not hearsay, we need not address this argument.

4

oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion." Ariz. R. Evid. 801(a).[2] "[W]ords or conduct not intended as assertions are not hearsay even when offered as evidence of the declarant's implicit belief of a fact." *State v. Chavez*, 225 Ariz. 442, ¶¶ 8, 9, 239 P.3d 761, 763 (App. 2010) (text messages from "prospective buyers [who] wanted to purchase drugs" from defendant admissible "as circumstantial evidence that [defendant] had drugs for sale.").

**¶8**　　　　Like the court in *Chavez*, we find reference to federal authority instructive. *See id.* ¶¶ 7-9. Commenting on Rule 801(a), Fed. R. Evid., the advisory committee explained its intent to "exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion" based on the perceived reliability of unintended communications. Fed. R. Evid. 801(a) advisory committee note. The committee emphasized the "key to the definition [of 'statement'] is that nothing is an assertion unless intended to be one." *Id.* And evidence "the person acted as he did because of his belief in the existence of the condition sought to be proved, from which belief the existence of the condition be inferred," is not hearsay. *Id.* The burden is on the party claiming an assertion was intended and "ambiguous and doubtful cases will be resolved . . . in favor of admissibility." *Id.*

**¶9**　　　　In *State v. Carrillo*, 156 Ariz. 120, 124, 750 P.2d 878, 882 (App. 1987), *vacated in part on other grounds*, 156 Ariz. 125, 128, 750 P.2d 883, 886 (1988) (granting

---

[2]The version of Rule 801(a) effective January 1, 2012 defines "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Ariz. R. Evid. 801(a). This stylistic change clarifies that all assertions must be intended as such to constitute a "statement."

5

review only on issues of voluntary confession and improper comment on invocation of rights), the defendant argued statements the deceased victim had made should have been excluded as hearsay. In that case, the victim had spoken on the phone to a friend around the time of death and the friend had heard him say to someone in the background, "Hector, don't do that now," or "Hector, we will do that later." *Id.* at 121, 750 P.2d at 879. The remark "[wa]s probative because it show[ed] that a person named Hector was in [the victim]'s home at that time, but [the victim] was not intending to assert anything by making the statement." *Id.* at 124, 750 P.2d at 882. Therefore, the statement was "not hearsay at all" and was properly admitted. *Id.*

¶10 Here, as B.C. testified, two women appeared at Palmer's trauma bay, and asked where his backpack was. At that time no backpack as yet had been identified. They then left with the backpack. This testimony suggested the women "acted as [they] did because of [their] belief in the existence of the condition sought to be proved,"— Palmer's ownership of the backpack—and their belief gave rise to an inference the backpack belonged to Palmer. Fed. R. Evid. 801(a) advisory committee note; *see also Chavez*, 225 Ariz. 442, ¶ 7, 239 P.3d at 763. However, the question was not "intended by [the women] as an assertion," Ariz. R. Evid. 801(a), and, under the analysis the federal advisory committee proposed, was not subject to exclusion as hearsay. *See* Fed. R. Evid. 801(a) advisory committee note; *Chavez*, 225 Ariz. 442, ¶¶ 8, 9, 239 P.3d at 763; *see also State v. Ellison*, 213 Ariz. 116, ¶¶ 54, 56, 140 P.3d 899, 915 (2006) (testimony about person's "[n]onverbal conduct is hearsay if it is intended to be an assertion"; officer's testimony that witness's "actions and body language were visibly very different" at

6

mention of defendant not intended as assertion and not hearsay); *State v. Printz*, 125 Ariz. 300, 303, 609 P.2d 570, 573 (1980) (hearsay limited to words or conduct "intended by the actor as an assertion"; police officer's purchase of television for $299.85 not intended as assertion of value). Similar to *Carrillo*, 156 Ariz. at 124, 750 P.2d at 882, the women were not "intending to assert anything by making the statement," but were merely attempting to find the backpack, and thus their statement was "not hearsay at all." Therefore, the trial court did not err in allowing the testimony over Palmer's objection.[3]

**Insufficient Evidence**

¶11      Palmer also argues evidence that the backpack containing the methamphetamine belonged to him was nothing more than "conjecture or suspicion" and was insufficient to support the jury's verdict. "When considering claims of insufficient evidence, 'we view the evidence in the light most favorable to sustaining the verdict and reverse only if no substantial evidence supports the conviction.'" *State v. Fimbres*, 222 Ariz. 293, ¶ 4, 213 P.3d 1020, 1024 (App. 2009), *quoting State v. Pena*, 209 Ariz. 503, ¶ 7, 104 P.3d 873, 875 (App. 2005). Substantial evidence is that which "'reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 913-14 (2005), *quoting State v. Hughes*, 189 Ariz. 62, 73, 938 P.2d 457, 468 (1997). "Evidence may be direct or circumstantial, but if reasonable minds can differ on inferences to be drawn therefrom, the case must be

---

[3]Because we find no error, we need not address Palmer's argument that any error was not harmless.

7

submitted to the jury." *State v. Landrigan*, 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993) (citation omitted).

¶12 Here, B.C.'s testimony that she saw the backpack brought into Palmer's trauma bay as a normal part of the transfer of a patient's property from the ambulance that transported him to the hospital is circumstantial evidence from which a jury could infer the backpack belonged to him. Similarly, although Palmer is correct there is no evidence he responded to the statement from the women who came to his trauma bay and removed the backpack, the fact they appeared there and addressed him directly about "his" backpack, and then left with the only backpack present, leads to the reasonable inference that the backpack was his. A reasonable jury could have found this evidence of possession sufficient beyond a reasonable doubt, and substantial evidence thus supports his conviction. *See Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d at 913-14.

## Disposition

¶13 For the foregoing reasons, we affirm Palmer's conviction and sentence.

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

8

E C K E R S T R O M, Presiding Judge, dissenting.

¶14        The verdict in this case turned on whether the jury could conclude beyond a reasonable doubt that a certain backpack containing methamphetamine, located in an emergency room bay, belonged to the defendant. To secure that verdict, the state elicited the express assertion of a nameless female declarant that the backpack was Palmer's.[4] Because the state did not call the declarant as a witness, because the sincerity and accuracy of her assertion could therefore not be tested by oath and cross-examination, and because the assertion was offered directly for the proposition that the backpack belonged to Palmer, it was hearsay as defined in Rule 801(a) and (c), Ariz. R. Evid.

¶15        Our rules define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ariz. R. Evid. 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Ariz. R. Evid. 801(a). Here, the declarant asked Palmer, "[W]here is your backpack[?]" immediately before retrieving the backpack that had contained the methamphetamine and departing with it. In the context of the encounter, the words of that utterance communicated two discrete thoughts: (1) that the declarant was trying to locate a backpack and (2) that it belonged to Palmer. Thus, the declarant, by choosing the words "your backpack" to describe the object of her search to Palmer, directly

---

[4]According to B.C., the statement was uttered by "women" who visited the emergency room—but because we are dealing with only one statement, we can infer that only one of the two women spoke.

9

asserted her belief that the backpack—the one she was searching for—belonged to him. For this reason, that component of her query was an assertion and, therefore, a "statement" as defined by Rule 801(a).

¶16 On the record before us, there can be little dispute that the state offered that assertion to prove the truth of the declarant's belief—that the backpack for which she was searching, and that she departed with, belonged to Palmer. Indeed, the state has not offered any other plausible purpose for which it would need to elicit that portion of the declarant's utterance.[5] Therefore, the component of the declarant's utterance that directly expressed her belief that the backpack was Palmer's was inadmissible hearsay as defined by the rule.

¶17 Citing *Chavez*, 225 Ariz. 442, ¶¶ 8, 9, 239 P.3d at 763, and the advisory committee note to Rule 801(a), Fed. R. Evid., the majority concludes the utterance here was nonhearsay because it was "not intended as an assertion." *Supra* ¶ 7. In my view, that analysis overlooks a crucial distinction between the nonhearsay statements addressed in *Chavez* and those here, and misunderstands the text of the advisory committee note, which sets forth precisely that distinction. In so doing, the majority also mischaracterizes

---

[5]The state has argued that admitting the statement was necessary to explain the circumstances under which the women took the backpack. But no rule of evidence prevented the state from eliciting that the women addressed Palmer before departing with the backpack. Indeed, the prosecutor initially attempted to elicit the declarant's conduct in addressing Palmer without eliciting the content of her words. Thus, the state has not explained how the specific words "your backpack" could be logically offered for any other purpose than to prove the backpack belonged to Palmer.

the pertinent utterance here as an implicit rather than an express assertion of the declarant's belief.

¶18 In *Chavez*, Division One of our court held that a series of text messages left on the defendant's phone, apparently inquiring about the purchase of methamphetamine, were nonhearsay because they were not offered for the truth of the matters directly asserted therein—that the declarants wanted to purchase drugs. 225 Ariz. 442, ¶¶ 2, 6-9, 239 P.3d at 762-63. Rather, they were offered for the "implicit belief[s]" conveyed by those messages—that the defendant "had drugs for sale." 225 Ariz. 442, ¶¶ 8, 9, 239 P.3d at 763. In so concluding, the court adopted the definition of "statement" from the advisory note to the federal rule that excludes from the application of the hearsay rule "'all evidence of conduct, verbal or nonverbal, not intended as an assertion.'" *Id.* ¶ 7, *quoting* Fed. R. Evid. 801(a) advisory committee note. Applying that approach to the comments before it, the court reasoned that the declarants' inquiries to purchase drugs were merely a species of verbal conduct because they were only implicit expressions of the declarants' belief that Chavez possessed drugs for sale rather than direct ones. *Id.* ¶¶ 7-9. Put another way, nothing about the words contained in the utterances, "Can you deliver a 50-shot?" or "I just need a half" asserted that Chavez possessed methamphetamine for sale. *Id.* ¶ 6. Rather, the declarants' belief that Chavez sold drugs had to be inferred or deduced from the words uttered, thereby demonstrating that the declarants did not specifically intend to convey that belief with their words.

¶19 By contrast, the words chosen by the declarant here, "your backpack," themselves conveyed the declarant's belief that the backpack she sought belonged to

11

Palmer. This is a crucial distinction. As the advisory note emphasizes: "It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion." Fed. R. Evid. 801(a) advisory committee note. Thus, contrary to the suggestion of the majority, "your backpack" would be considered an "assertion" even under the federal advisory note approach adopted in *Chavez*. Here, in conformity with that approach, we are assured the declarant quite consciously intended to assert her belief that the backpack belonged to Palmer because she makes that assertion directly in the words she chose.

¶20 That the utterance here qualifies as hearsay finds further support in both the logic of the federal advisory note approach and the broader purpose of the hearsay rule. Commentators have explained the rationale for the advisory note approach as follows:

> A principal reason for excluding hearsay is that the veracity of the declarant cannot be tested by cross-examination. In the case of non-assertive acts, the actor by definition does not intend to make an assertion, meaning that the risk of insincerity is substantially diminished. The actor is at least not trying to lie.

4 Stephen A. Saltzburg et al., *The Federal Rules of Evidence Manual* § 801.02[1][c], at 801-14 (8th ed. 2002). But when, as here, the declarant had chosen words that directly convey the assertion that the backpack belonged to Palmer, the risk of insincerity is not diminished in the least. Indeed, the declarant's arrival at the emergency room with the exclusive focus on locating and departing with the backpack strongly suggests the declarant was aware that the backpack contained methamphetamine. Given that the declarant inquired about the backpack in the presence of hospital staff, her motivation to

12

verbally distance herself from ownership of the backpack is apparent. Thus, the importance of cross-examination to test the sincerity of the assertion here is heightened rather than diminished.

¶21      Nor can the characterization of the assertion as nonhearsay be harmonized with the core purpose of the hearsay rule. That purpose is to preserve an "'Anglo-American system of law'" premised on the assumption that litigants will meet their burdens of proof and prevail on factual disputes by presenting evidence through witnesses under oath, subject to cross-examination and assessment of demeanor. *Douglass v. State*, 44 Ariz. 84, 93-94, 33 P.2d 985, 988 (1934), *quoting* 5 John Henry Wigmore, *Evidence in Trials at Common Law* § 1367, at 32 (Chadbourn rev. ed. 1974). As Justice Lockwood long ago observed in quoting Wigmore's treatise on evidence:

> "For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience."

*Id*. at 93, 33 P.3d at 988, *quoting* Wigmore, *supra* ¶ 21, at 32. In generally addressing the purpose of Rule 801, Ariz. R. Evid., Arizona's own oft-cited evidence treatise concludes:

> The minimization of the dangers of misperception, misremembering, insincerity and ambiguity by cross-examination is the essential basis of the hearsay rule. The general requirement that a witness offer his information from the witness stand before the trier, however, serves two other purposes, as well. It requires the taking of an oath impressing the witness with the solemnity and importance of the

13

> occasion. The risks of conscious or unconscious exaggeration are thereby reduced. In addition, the trier is able to observe the demeanor of the witness as an aid to assessing his credibility.

1 Joseph M. Livermore et al., *Arizona Practice: Law of Evidence* § 801.1, at 303 (4th ed. 2000).

¶22 In this case, arguably the most important piece of evidence marshaled by the state to demonstrate Palmer's ownership of the backpack was the assertion of an unnamed woman, under suspicious circumstances, that he owned it.[6] As a result of the trial court's ruling, the sincerity, accuracy, and basis for that pivotal assertion was not tested by cross-examination. Nor could the jury assess the demeanor of the declarant under oath. That the majority's analysis has exempted such a pivotal assertion, given under such suspicious circumstances, from the rule that entitles a litigant to meaningfully challenge its truth and accuracy—an exemption so at odds with the purpose and rationale of the hearsay rule and the traditions of our justice system—suggests an oversight in that analysis.

---

[6]The state's only other evidence suggesting the backpack belonged to Palmer was B.C.'s testimony that the paramedics, as a matter of regular procedure, transport the personal items of patients from the accident scene and deliver those items to the emergency bays where the patients are treated. The state, however, declined to call the specific paramedics involved in this case to address where they found the backpack at the accident scene involving Palmer's motorcycle, why they believed it belonged to Palmer, or whether the seriously injured Palmer had indicated to them that it belonged to him. I would conclude such circumstantial evidence was sufficient to survive a motion for judgment of acquittal. However, given the chaotic nature of both accident scenes and hospital emergency rooms, I am skeptical a jury would necessarily have found Palmer guilty beyond a reasonable doubt on such evidence alone.

¶23 The majority reasons that "the women 'acted as [they] did because of [their] belief in the existence of the condition sought to be proved,'—Palmer's ownership of the backpack—and their belief gave rise to an inference the backpack belonged to Palmer." *Supra* ¶ 10, *quoting* Fed. R. Evid. 801(a) advisory committee note. From these premises, the majority posits that the utterance embedded in that sequence of events was not intended as an assertion. But, the majority's reference to the segment of the advisory note addressing actions implying "belief in the existence of the condition sought to be proved," Fed. R. Evid. 801(a) advisory committee note, a segment devoted to addressing whether certain *nonverbal* conduct constitutes hearsay, provides little guidance in determining whether the *verbal* utterance we analyze here can be characterized as an assertion. Rather, our starting point in evaluating whether a certain verbal communication constitutes hearsay, even under the federal advisory analysis, must be whether the utterance constitutes "an assertion made in words." *Id.*

¶24 My colleagues also observe that at the time the declarant spoke, "no backpack as yet had been identified," and therefore the utterance could not have been a "statement about the backpack that contained the drugs." *Supra* ¶ 10. The reasoning suggests that the specific meaning of the utterance itself was contingent on the declarant's subsequent actions, and therefore the meaning of the utterance must be inferred from context. Indeed, in the absence of any context, the phrase "your backpack" asserts very little meaning. In the absence of any factual context, we cannot know who the declarant is addressing and therefore who she claims owns the backpack. Nor, in the absence of context, do we know which backpack she seeks to locate. But these

15

observations give us little guidance in assessing whether the utterance in question is assertive and therefore hearsay under the federal advisory approach. All communication, both hearsay and nonhearsay, gains its meaning from its factual context and almost all spoken exchange depends on context to be understood. *See* David Crystal, *The Cambridge Encyclopedia of Language* 106 (3d ed. 2010) (hereinafter *Cambridge Encyclopedia*) (meaning of verbal communication determined by "analyses of the way words and sentences are used in specific contexts"); *see also* David Crystal, *A Dictionary of Linguistics and Phonetics* 87 (4th ed. 1997) ("Words, it is suggested, have meaning only when seen in context."). Were we to conclude that an utterance ceases to be an assertion merely because the utterance is dependent on context for its meaning, there would be few, if any, utterances that would qualify as assertions under the rule.[7]

¶25 For example, in the context of a homicide case, we would not characterize the statement of an out-of-court declarant, "You killed my brother," as nonhearsay simply because the declarant may have had more than one brother or because the words themselves do not clarify who the declarant is accusing. Rather, we presumably know from the context of the case that the declarant is referring to the brother whose death is the topic of the case and claiming the person whom she is addressing caused the death. Here, similarly, the context of the instant case readily clarifies which backpack the declarant sought and to whom she claimed it belonged. In neither case does our recourse

---

[7]Many commonly used words in every language are inherently dependent of context for meaning, including pronouns such as "your." *See Cambridge Encyclopedia*, *supra* ¶ 24, at 110 (discussing deictic words that "can be interpreted only with reference to the speaker's position in space or time" and describing categories of such words as personal, spatial, and temporal).

to the context of the utterances demonstrate that the respective declarants did not specifically intend to assert precisely the meaning conveyed by their words. *See* Fed. R. Evid. 801(a) advisory committee note ("The key to the definition [of a statement] is that nothing is an assertion unless intended to be one.").

¶26 Put in terms of Rule 801 analysis, the truth of the matter asserted here was that the backpack the declarant was trying to locate belonged to Palmer. Merely because we must evaluate the *relevance* of that assertion from other factual developments of the case does not transform the utterance itself into an unintended implied assertion. As discussed above, the declarant fully intended to convey that the backpack for which she was searching belonged to Palmer. That she then immediately saw, and departed with, the backpack that contained methamphetamine is what makes the statement especially probative in the context of the case. Few out-of-court statements convey in a phrase the entire proponent's theory of the case (here, that the methamphetamine belonged to Palmer), and such is not required by Rule 801 to characterize a statement as hearsay. In short, that an out-of-court statement gains its probative import from the context of the case is neither surprising nor pertinent to the question of whether the statement is hearsay.

¶27 Nor does the pertinent utterance here become nonhearsay merely because it was embedded in the question, "[W]here is your backpack[?]" As the highest court of Maryland has pointed out, "The grammatical form of an utterance does not control whether the words are hearsay." *Stoddard v. State*, 887 A.2d 564, 581-82 (Md. 2005) (characterizing question, "Is Erik going to get me?" as hearsay); *see also United States v.*

17

*Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005) (characterizing question, "How did you guys find us so fast?" as hearsay; rejecting suggestion that question may never contain hearsay, reasoning that pertinent issue is whether assertion implied within question was intended by declarant).[8] And, one can readily conjure statements, phrased in the form of a question, that contain positive declarations of potential importance in a given criminal case. For example, the inquiries: "Why did you kill my brother?" "How did you get that blood on your shirt?" and "Where is your backpack that I saw you put the methamphetamine into?" all include assertions, fully intended by the declarant as assertions, and therefore, statements pursuant to Rule 801(a), Ariz. R. Evid. *See Brown v. Commonwealth*, 487 S.E.2d 248, 251-52 (Va. App. 1997) (giving other examples of questions containing assertions, including "Why did you stab me, Brutus?").

¶28 As explained above, the pertinent utterance in this case is hearsay even under the narrow approach set forth in the federal advisory committee note to the Federal Rules of Evidence. I am less confident that our supreme court has adopted that approach or should do so. In *Chavez*, this court reasoned that because our rule of evidence defining hearsay was adopted verbatim from its counterpart in the federal rules, *compare* Ariz. R. Evid. 801(a), (c), *with* Fed. R. Evid. 801(a), (c), our supreme court must have also

---

[8]A line of federal cases posit that an "inquiry" is not an assertion and accordingly cannot be a hearsay statement. *See United States v. Wright*, 343 F.3d 849, 865-66 (6th Cir. 2003) (cases for that proposition). These cases contain little reasoning other than citation to each other and the observation that, according to Webster's Dictionary, the term "assertion" connotes a "positive declaration." *See, e.g.*, *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990). And, none of these cases address more complex—yet fairly typical—phrasing wherein positive declarations are included in an interrogatory. Arguably, the reasoning of those cases does not contemplate the problem presented here.

intended to adopt all of the reasoning found in the advisory note to that federal rule. *See*

*Chavez*, 225 Ariz. 442, ¶ 7 & n.4, 239 P.3d at 763 & n.4. But our supreme court did not

include the federal advisory note as a comment to Rule 801 when it promulgated

Arizona's modern rules of evidence in 1977. *See* 115 Ariz. XXX, LI. Rather, it

generated its own comment to that rule which does not parallel the federal advisory

committee note in any respect. *See* Ariz. R. Evid. 801 comment. And, although our

supreme court intended to model our rules of evidence from the federal rules, it has not

hesitated to deviate from those rules when it has seen fit to do so. *See* Roger W.

Kaufman, *The Arizona Rules of Evidence—A Comparison with the Federal Rules*, 2 Ariz.

St. L.J. 365, 384 (1977) (comparing the specific provisions of Arizona Rules of Evidence

with the federal rules and noting differences); *see also* Ariz. R. Evid. prefatory comment

to 2012 amendments (summarizing changes to recent rule amendments and noting

differences from restyled federal rules).[9]

¶29          In short, our supreme court has neither expressly adopted nor rejected the

federal advisory note approach to defining which statements are subject to hearsay

analysis. That approach has substantial implications for the scope of the hearsay rule. As

seen below, its rationale has been subject to considerable criticism by commentators and

---

[9]The majority observes that the revised wording of Rule 801(a) effective January 1, 2012, now suggests that all written or oral assertions must be intended as assertions to qualify as a "statement." However, our supreme court's comment to that revision states that "[t]hese changes are intended to be stylistic only. There is no intent in the restyling to change any result in any ruling on evidence admissibility." Ariz. R. Evid. 801 comment to 2012 amendment. I am therefore confident that our supreme court had no intent to adopt any particular view of the federal advisory note approach when importing the federal stylistic changes.

it has been rejected after thorough analysis by several jurisdictions. For those reasons, I would submit that our supreme court's ultimate verdict should depend not on whether our rules of evidence have generally paralleled the federal rules—but rather on a careful analysis of whether the federal advisory note sets forth the most appropriate framework for the presentation of evidence in Arizona courtrooms, a topic which my colleagues did not purport to address in *Chavez*.

¶30 The bulk of the commentary provided in the federal advisory note is not controversial. It provides a coherent framework for evaluating when conduct alone constitutes the functional equivalent of a hearsay statement. *See* Fed. R. Evid. 801(a) advisory committee note. The note logically explains that "nonverbal conduct" should not be characterized as an assertion unless intended to be such by the actor. *Id.* However, it markedly departs from the common law approach by apparently extending that framework to verbal declarations that imply, but do not directly assert, the beliefs of an out-of-court declarant. *Id.* (characterizing utterances from which a witness's belief may be only inferred as "nonassertive verbal conduct" and subject to the same intentionality analysis used for conduct); *Stoddard*, 887 A.2d at 569-72 (comparing common law analysis of implied verbal assertions to federal advisory note approach).

¶31 Under the common law approach, by contrast, courts distinguish which "implied" assertions can be characterized as hearsay based on the purpose for which the pertinent declaration is offered by its proponent. *See Stoddard*, 887 A.2d at 571. For example, if an out-of-court declaration is offered to demonstrate the truth of the implied belief expressed therein, it is characterized as hearsay and is presumptively inadmissible

20

regardless of whether the declarant specifically intended to assert that particular belief. *See id.* However, if the declaration in question is not offered to show the truth of the implied belief, but for some other purpose, it is nonhearsay. *See id.*; *see also* Ariz. R. Evid. 801(c). In short, the common law framework tethers the hearsay characterization—and the necessity of adversarial testing through oath and cross-examination—to the importance of believing the truth of the declarant's implied assertion in the context of the case.

¶32 As observed above, advocates for the federal advisory note approach explain that an unintended implied assertion is more reliable because the declarant has not chosen to express the belief in question—and we can therefore presume the sincerity of that belief. *See* Saltzburg et al., *supra* ¶ 20, at 801-14; *see also* Fed. R. Evid. 801(a) advisory committee note (noting reduced likelihood of fabrication with nonverbal rather than assertive conduct). For that reason, such commentators conclude that the need for adversarial testing by cross-examination and oath are "diminished." Saltzburg et al., *supra* ¶ 20, at 801-14.

¶33 But, the hearsay rule is designed to facilitate adversarial testing of more than the sincerity of an out-of-court declarant's beliefs. Placing declarants under oath and subjecting their beliefs to cross-examination also minimizes "the dangers of misperception, misremembering . . . and ambiguity," reduces the risks of exaggeration, and allows the credibility of the witnesses to be assessed not just from the nature of the words expressed but also from their demeanor on the witness stand. Livermore et al., *supra* ¶ 21, at 303 (itemizing purposes of hearsay rule). And, in many civil and criminal

21

cases, it is the accuracy, not the sincerity, of the witnesses' beliefs that are at the center of the dispute.[10] Under such circumstances, the purposes of the hearsay rule—in improving the quality of fact-finding—would be poorly served by exempting implied assertions from adversarial testing simply because their non-intentional nature diminishes concerns about their sincerity.

¶34      Moreover, implied assertions, when not intended, arguably impose greater risks of inaccuracy and ambiguity given that the declarant did not mindfully intend to express, and did not specifically articulate, the belief in question. *See* Ronald J. Bacigal, *Implied Hearsay: Defusing the Battle Line Between Pragmatism and Theory*, 11 S. Ill. U. L. J. 1127, 1132 (1987) (observing that "unintended implied assertions are inherently more ambiguous"); *see also Stoddard*, 887 A.2d at 575 (quoting Bacigal with approval). And, commentators and courts have expressed skepticism about whether concerns regarding the sincerity of a witness's beliefs are meaningfully diminished when those beliefs must be inferred from the witness's statement. The Iowa Supreme Court has correctly observed:

> [E]ven the danger of insincerity may continue to be present in those instances where the reliability of the direct assertion may be questioned. If the expressed assertion is insincere, such as a fabricated story, the implied assertion derived from the expressed assertion will similarly be unreliable. Implied

---

[10]For example, the sincerity of important categories of witnesses—such as innocent bystander witnesses to crimes and accidents, expert witnesses, most law enforcement officers, and financial and accounting witnesses as to damages in civil cases to name a few—are seldom in serious dispute. But the reliability and accuracy of such witnesses' observations and beliefs are often in dispute and can be pivotal to the outcome of cases.

> assertions can be no more reliable than the predicate expressed assertion.

*State v. Dullard*, 668 N.W.2d 585, 594 (Iowa 2003); *accord Stoddard*, 887 A.2d at 575-77; Paul R. Rice, *Should Unintended Implications of Speech be Considered Nonhearsay? The Assertive/Nonassertive Distinction under Rule 801(a) of the Federal Rules of Evidence*, 65 Temp. L. Rev. 529, 534-35 (1992).

¶35 Thus, the unintended nature of an assertion does not necessarily reduce concerns about its sincerity—at least as to those declarants whose credibility we would most want to test through cross-examination. At best, then, the federal advisory note approach is a blunt tool for analyzing the sincerity of unintended assertions. At worst, it risks exempting from adversarial testing pivotal assertions which may pose substantial concerns about accuracy and ambiguity—and which beg for testing and clarification by cross-examination under oath.

¶36 Of course, there are also many circumstances when the reliability of an assertion, direct or implied, is so elevated, and the need for cross-examination so diminished, that enforcement of the hearsay rule becomes an unnecessary impediment to the efficient operation of our courts. *See* Livermore et al., *supra* ¶ 21, at 344 (acknowledging exclusion of all hearsay "would exact too high a price on the just resolution of disputes"). Indeed, the federal advisory note appears to justify its approach in part on that basis. *See* Fed. R. Evid. 801(a) advisory committee note.

¶37 But, to that purpose, our supreme court has promulgated rules that recognize numerous exceptions to the exclusion of hearsay. Those rules include catch-all

23

provisions that generally allow for the admissibility of hearsay when the assertion carries "equivalent circumstantial guarantees of trustworthiness" and is "more probative . . . than any other evidence which the proponent can procure through reasonable efforts."  *See* Ariz. R. Evid. 803, 804 (itemizing twenty-five exceptions to hearsay rule when availability of witness immaterial and six exceptions when witness unavailable, including catch-all under both rules).[11]  In my view, these express exceptions, coupled with the catch-all provisions, provide ample guarantee that unintended implied assertions would remain admissible when little purpose would be served by producing the declarant as a live witness subject to cross-examination.  And, that framework, as set forth in Rules 803 and 804, allows trial courts to assess the propriety of admitting such evidence with considerably more analytical precision, tailored to the specific circumstances under which the statement is uttered, the importance of the evidence in the case before it, and with recourse to all of the factors bearing on the need for cross-examination.[12]

---

[11]The catch-all provisions for Rules 803 and 804 have been consolidated under new Rule 807, Ariz. R. Evid., as part of the 2012 amendments to the Arizona Rules of Evidence.

[12]For example, the implied assertions from the text messages at issue in *Chavez*— that Chavez possessed drugs for sale—are reliable not because those assertions were not specifically intended but rather because there were several such declarants (reducing the risk any declarant had sent a text message to the wrong number or had been erroneously referred to Chavez), because the content of the requests exposed the declarants to potential criminal liability (and therefore had indicia of reliability analogous to the co-conspirator and statement against interest exceptions to the hearsay rule), and because those text messages were directed at a person who had a significant quantity of methamphetamine, coupled with packaging materials, in his possession.  *See generally* 225 Ariz. 442, ¶¶ 2, 6, 239 P.3d at 762-63.  I submit that the court would have had considerably less comfort in admitting a lone text message, from an out-of-court declarant, containing the very same implied assertion, if that message came from but one

¶38      Under either the common law approach or the federal advisory committee note approach, the pertinent utterance here, "[W]here is your backpack[?]" contains but one assertion:  that the backpack the declarant sought belonged to Palmer.  But, as discussed, it is a pivotal assertion in the context of the case.  For the reasons stated above, I would conclude the trial court erred in characterizing the statement as nonhearsay and that the error was not harmless.  I would therefore vacate the conviction and remand the case for a new trial.  For the reasons set forth above, *supra* n.7, I agree with my colleagues that the state presented sufficient circumstantial evidence of Palmer's connection to the backpack to survive a motion for judgment of acquittal.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

declarant and was the only evidence that its recipient possessed or sold methamphetamine.

25